UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ARMENUHI PAMBUKCHYAN, | ) | No. CV 09-06682-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

|   |   |   |
|---|---|---|
| 1 |   | failing to give appropriate weight to the treating |
| 2 |   | physicians (JS at 2-14; |
| 3 | 2. | Whether Defendant erred in determining Plaintiff's Residual |
| 4 |   | Functional Capacity (JS at 15-20); and |
| 5 | 3. | Whether the ALJ erred in improperly evaluating Plaintiff's |
| 6 |   | credibility (JS at 20-27). |

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN ASSESSING THE OPINIONS**

**OF PLAINTIFF'S VARIOUS TREATING PHYSICIANS**

**A.   Procedural Background**.

As indicated by the ALJ in his decision of September 4, 2008 (AR 74-85), Plaintiff has filed several prior applications for Supplemental Security Income ("SSI").  Her fourth application of June 14, 2001 resulted in denial by an ALJ decision of March 28, 2005. After proceeding unsuccessfully to the Appeals Council, Plaintiff filed suit in District Court concerning that decision.  While that case, which was later adjudicated against Plaintiff, was pending, she filed the application which is the subject of this lawsuit.  Indeed, Plaintiff filed the underlying application for SSI in this case, alleging an onset date of March 29, 2005, the day after the previous unfavorable decision was issued. (AR 74.)

Plaintiff takes issue with the ALJ's citation to the Ninth Circuit's opinion in <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir.

1988). Under that case, findings made by a previous ALJ as to a plaintiff's residual functional capacity ("RFC"), education, and work experience will receive some res judicata consideration. A resulting presumption of continuing disability may be rebutted by a claimant if changed circumstances, such as a change in age category, or an increase in severity of impairments, are demonstrated. Plaintiff argues that since the last decision, she attained the age of 50, therefore entering into a new age category, which has been determined to constitute a changed circumstance precluding the application of res judicata (JS at 13); however, Plaintiff does acknowledge that "other issues" in the previous decision may be entitled to some res judicata effect, but can be overcome with new and material evidence. (Id., citing Chavez, 844 F.2d at 694.) Plaintiff believes that she has provided new and additional material evidence from her treating physicians which show both a continuing and worsening of her impairments. For the reasons to be set forth, the Court disagrees.

**B.   Discussion**.

In his decision, the ALJ found Plaintiff has the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six out of eight hours; and sit for six hours in an eight-hour workday. Certain postural and related limitations were imposed, and as to mental limitations, it was found that Plaintiff can perform simple repetitive tasks with occasional contact with supervisors and coworkers. (AR 79.)

Plaintiff asserts error in the ALJ's diminishment of the opinions of certain of her treating physicians: Dr. Ciasca (with regard to mental limitations); Dr. Balian, and Dr. Maissian.

**1. <u>Dr. Balian</u>**.

As the ALJ noted, Plaintiff saw Dr. Balian once monthly from October 2001 until June 1, 2004. (AR 83.) Although she testified that she saw Dr. Balian once every two or three months, she did not see him again until March 27, 2007, and after June 26, 2007, did not see him again until April 23, 2008. (<u>Id</u>.) The ALJ declined to accept Dr. Balian's opinion that Plaintiff can perform less than the full range of sedentary work, because Dr. Balian relied on certain conditions, including neck pain, knee pain and hand pain, that the ALJ found Plaintiff failed to establish as medically determinable. Further, Dr. Balian performed no muscle strength testing, although Plaintiff's counsel argues that there is no evidence that this kind of objective testing is necessary to render an opinion.

As the previous ALJ noted in his decision of March 28, 2005, Dr. Balian, among other treating physicians, assessed extreme limitations as to Plaintiff's ability to work, despite minimal objective findings. (AR 64.) Dr. Balian opined that Plaintiff was required to use a cane, which the previous ALJ found inconsistent with the entire record, and therefore detracted from Dr. Balian's credibility and the weight of his opinion. (<u>Id</u>.)

In the current case, Plaintiff strenuously argues that the ALJ erred in finding no objective support for Dr. Balian's opinion, noting that he ordered and reviewed an MRI of Plaintiff's lumbar spine in July of 2007. (AR 339-40.) But, Plaintiff has not refuted the ALJ's opinion that Dr. Balian relied upon impairments which were in fact not medically determinable. (AR 83-84.) Moreover, as the ALJ discussed in some detail, Dr. Balian documented positive straight leg raising in only the extremes of motion, a reduced range of back motion, and

1  reduced sensation in the L5 area, in addition to what he called a
2  "guarded gait." (AR at 82.)  These findings contrasted with those of
3  the consultative examiner ("CE"), Dr. Saeid, who examined Plaintiff on
4  April 26, 2007 (AR 292-96), and reported that although there was a
5  reduced range of motion in Plaintiff's back, she had negative
6  bilateral straight leg raise testing. (AR 79, 295.)  Further, she had
7  normal range of motion in her hands (AR 78, 295), and finally, normal
8  range of motion in her knees, with no effusion or evidence of
9  instability. (AR 77-78, 295.)

10     Concerning the res judicata impact of the previous ALJ's
11 determination of Dr. Balian's opinion, Plaintiff has not demonstrated
12 changed circumstances indicating a greater disability after the March
13 28, 2005 date of her last ALJ decision.  Even Dr. Balian noted that
14 Plaintiff's limitations have not changed since October 2002. (AR 334.)
15 Logically speaking, therefore, since Dr. Balian's opinions were
16 rejected by the previous ALJ's Decision, there is an absence of
17 changed circumstances which would militate in favor of giving
18 controlling weight to Dr. Balian's opinions.

20     **2.   Dr. Maissian**.
21     On April 11, 2008, Dr. Maissian diagnosed Plaintiff with a
22 psychotic disorder (AR 78), but the ALJ found insufficient
23 documentation of a psychotic disorder in Dr. Maissian's clinical
24 notes.  For example, the ALJ examined treatment notes of April 9,
25 2009, finding a failure to document any specific symptoms, nor was
26 there any indication that a mental status test was performed. (Id.)
27 Consequently, the ALJ rejected Dr. Maissian's opinion as
28 uncorroborated by clinical observations or assessments. (Id.)  Dr.

5

Maissian also largely accepted Plaintiff's subjective complaints rather than relying upon objective observations and testing. (AR 81-82.)  For example, on April 9, 2008, Dr. Maissian gave an opinion similar to the one he had provided in 2003, asserting that Plaintiff could not walk more than half a block; could not sit or stand for more than ten minutes at a time; could never lift more than ten pounds, could only occasionally move her head or hold it still; and was significantly limited in reaching, handling and fingering. (AR 314-316.)  As the ALJ observed, there is no indication that Dr. Maissian ever did any objective testing to substantiate such extreme findings. He never recommended intensive treatment. (AR 84.)  The ALJ instead relied upon the objective testing and opinions of the CE, Dr. Saeid, which were based upon independent clinical findings, and thus entitled to reliance as substantial evidence.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 3.  Dr. Ciasca.

After the ALJ issued his September 4, 2008 decision, Plaintiff submitted additional evidence from the Los Angeles County Department of Mental Health - Verdugo Mental Health Center. (AR 4-8, 350-68.) Included in this evidence was a new opinion from Dr. Ciasca dated April 28, 2009, and some treatment records. (AR 357-60.)  These records were reviewed by the Appeals Council, which determined that they did not provide a basis for changing the ALJ's decision. (AR 5.)

Dr. Ciasca first treated Plaintiff in 2003 (AR 365-68), and in that year, rendered an opinion that Plaintiff had major depressive disorder and panic disorder and a Global Assessment of Functioning ("GAF") of 45. (AR 368.)

1         When Plaintiff returned to Verdugo Mental Health Center on
2    December 23, 2008, she was interviewed by psychiatric intern Grace
3    Salinda, who completed an Intake Form. (It should be noted that the
4    Commissioner acknowledges that a psychologist signed the form after it
5    was completed, and therefore, the Commissioner does not challenge the
6    reliability of Ms. Salinda's information.)  Indeed, Ms. Salinda's
7    overall assessment was that Plaintiff had unimpaired intellectual
8    functioning, no perceptual disturbances, and that her judgment and
9    insight were intact. (AR 354.)
10        Dr. Ciasca's April 29, 2009 mental RFC questionnaire (AR 357-60)
11   rendered the somewhat extreme opinion that Plaintiff was unable to
12   deal with work stress; to accept instructions or criticism from
13   supervisors; perform at a consistent pace; sustain an ordinary routine
14   without special supervision; or maintain regular attendance. (AR 359.)
15   Dr. Ciasca noted that Plaintiff has had these limitations since June
16   6, 2003. (AR 360.)  These assessments were rejected in the previous
17   decision, and there has been no demonstration of changed circumstances
18   indicating a greater disability since the last decision.  The Appeals
19   Council noted that the assessment of Ms. Salinda demonstrated mostly
20   normal functioning, and reflected economic concerns more than mental
21   health concerns. (AR 5, 355.)  Further, most of Dr. Ciasca's treatment
22   notes stem from 2003, a period already assessed by the previous ALJ.
23   As such, and based upon all these factors, there was no error in
24   rejecting Dr. Ciasca's opinion submitted post-hearing in this case.

**II**

**THE ALJ PROPERLY DETERMINED PLAINTIFF'S RFC**

28        Plaintiff's second issue is characterized as an attack on an

7

improper determination by the ALJ of Plaintiff's RFC, but it is closely related to the first issue, in that its resolution depends upon whether the ALJ's rejection of the opinions of Drs. Balian and Maissian was supported by substantial evidence. The Court has already determined that it was.

Plaintiff also asserts that the ALJ erred in finding that her shoulder impairment would not pose additional limitations. (AR 83.) Finally, Plaintiff asserts that the ALJ failed to consider her frequent use of the bathroom due to her medication. (AR 83.) Plaintiff argues that this has an effect on her ability to function and must be considered.

The Court need not devote additional discussion to the ALJ's rejection of Dr. Maissian and Balian, since these matters have already been extensively discussed. Concerning Plaintiff's left shoulder impairment, the ALJ noted that Dr. Saeid did not have certain records documenting calcified tendinitis of the left shoulder (AR 83, 329), there was in fact no record evidence that Plaintiff's left shoulder required ongoing treatment. (Id.) Further, Dr. Saeid did perform a complete examination, finding, as to Plaintiff's shoulders, that she had normal range of bilateral motion. (AR 295.) Any calcification in her left shoulders has not been shown to have any effect on her capacity to work.

With regard to Plaintiff's assessment that medications required her to often use the bathroom, and this would have an effect upon her ability to work, the Court's examination of the record does not demonstrate that Plaintiff in fact required such frequent use of the bathroom that would limit her capacity for work. Consequently, the Court finds no error, and if there was any error, it was certainly

harmless.

### III

### **THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

The ALJ depreciated Plaintiff's credibility regarding subjective symptoms. The ALJ followed the regulations (20 C.F.R. §404.1529(c)), and Social Security Ruling ("SSR") 96-7p, which, together, describe the methodology for assessment of credibility, and the evidence which may be considered. After examining this evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements made by Plaintiff concerning intensity, persistence and the limiting effects of these symptoms are not entirely credible. The ALJ examined the objective evidence, or lack of it, including evidence of her treating physician, Dr. Maissian (AR 81), and Dr. Balian (AR 82). With regard to Plaintiff's testimony that she falls, the ALJ found no evidence of treatment for injuries sustained in a fall. Although Plaintiff's counsel argues that a person does not necessarily need to obtain treatment for a fall every time this occurs (JS at 22), it is fair to say that Plaintiff is a person who has historically obtained a wide variety of medical treatment for numerous types of conditions, and it could be expected that a serious condition, such as repeatedly falling down, would result in Plaintiff seeking medical care. Here, there is no such evidence in the record. Indeed, without again restating much of the evidence in the record, many of the "objective" observations attributed to Plaintiff's treating physicians are in fact largely recitations of her subjective complaints.

Plaintiff also complained of incapacitating headaches, but, as

the ALJ observed, there is nothing in the medical records to establish ongoing treatment for severe headaches.

Despite a diagnosis by her family doctor, Dr. Maissian, of depression, there is no evidence that Plaintiff was ever referred to a mental health specialist, and no evidence that she sought such treatment, or received it. The ALJ justifiably depreciated Plaintiff's complaints based upon this lack of treatment.

Looked at in total, as the Court must, there were in fact specific and legitimate reasons articulated to justify the ALJ's depreciation of Plaintiff's credibility.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: July 27, 2010        /s/
                            VICTOR B. KENTON
                            UNITED STATES MAGISTRATE JUDGE